THE CITY v. LAMSON.

1, A holder of coupons which have been cut off from the bond to whicn they were originally attached, may bring suit on them, if they repre- sent interest already due, notwithstanding he be no longer holder of the bond to which they belonged.   He need not, if he declares properly, produce the bond.

* *Supra*, 353.

2. In suing on the coupons in such case it is proper enough to recite the bonds in such general way as explains and brings into view the relation which the coupons originally held to the bonds, and in some respects still hold.

3. The suit does not by such recital—that is to say, by one in the nature of inducement and by way of preamble only—become a suit upon the bond. It is still a suit on the coupons.

4. A coupon, if of the ordinary sort, being but a repetition, as respects each six months or other stated term, of the contract which the bond itself makes on that subject, and but a device for the convenience of the holder, a suit upon it is not barred by the statute of limitations, unless the time prescribed in the statute be sufficient to bar also suit upon the bond.

5. A debt for a specific sum contracted by a city, and invalid because a statute which authorized the city to contract a debt did not also limit the extent of it, is made valid by a subsequent statute recognizing the validity of the debt as contracted.

6. Where bonds issued to *bonâ fide* holders for value, are valid by the judicial decisions of a State when issued, subsequent decisions in the same State cannot destroy their validity in such hands. *Gelpcke* v. *City of Dubuque* (1 Wallace, 175), affirmed.

ERROR to the Circuit Court for the District of Wisconsin, the case being thus:

The 3d section of the 11th article of the Constitution of Wisconsin ordains that

"It shall be the duty of the legislature to provide for the organization of cities and incorporated villages, *and to restrict their power of borrowing money, contracting debts, and loaning their credit,* so as to prevent abuses in contracting debts by such municipal corporations."

With this provision in force as fundamental law, the legislature of the State, on the 2d March, 1857, by an act* which amended and consolidated the several acts relating to the city charter, authorized the common council of the city of Kenosha to "borrow, on the corporate credit of the city, *any* sum of money, for *any* term of time, at *any rate of interest,* and payable at *any* place deemed expedient, issuing bonds or scrip therefor." The city accordingly did borrow $100,000 to aid

---

* Chap. 188, Private Laws.

in the construction of the Kenosha and Rockford Railroad, and it issued bonds in sums of $500 and $1000 each for payment. They were headed,

"*Issued according to law to the Kenosha and Rockford Railroad Company, to aid in the construction of their railroad;*"

and were made payable twenty years from date, at the People's Bank, in the city of New York, with interest, at the rate of ten per cent. per annum, to be paid semi-annually, upon the presentation of the proper coupons for said interest. For the payment of the bonds and interest, the faith of the city was declared to be pledged. The bonds were certified by the mayor and city clerk to have been issued under an act of the legislature, passed March 2d, 1857, giving authority to the city to lend its credit, for the sum specified; and also, in pursuance of a vote of the freeholders of the city, taken for the purpose of the loan of the $100,000 to the railroad company.

Attached to each bond were a series of coupons, like those now usually attached to railroad bonds, for the semi-annual interest as it should become due in each year. The following was the form of those on the bonds for $500:

$25. The city of Kenosha, Wis., will pay to the bearer twenty-five dollars on the 1st day of September, 1860, at the People's Bank, in the city of New York, on presentation of this coupon, being the interest due on that day on the bond of said city, numbered 1, dated this 1st day of September, 1857.

G. H. PAUL,<br>Mayor.

H. T. WEST,
      Clerk.

Subsequent to the issue of the bonds the name of "The Kenosha and Rockford Railroad Company" was changed to "The Kenosha, Rockford and Rock Island Railroad Company;" and a statute of 1859 provided that "the common council of the city of Kenosha should have generally the charge and control of all interest the city of Kenosha *now has, or may hereafter have* in that railroad." The act then provided that the common council should appoint a railroad

commissioner, that when duly appointed he should be *ex officio* a member of the board of directors of the railroad; and a statute of 1862 authorized the city " to issue new bonds, in exchange for the bonds and scrip *heretofore* issued by said city, on railroad account, now outstanding and unredeemed, for the purpose of compromising *the indebtedness* of said city on such terms as may be agreed upon between the city and its *creditors*."

One Lamson having one hundred and seventy-two coupons for the interest due on the bonds in 1860 and 1861, and unpaid, brought suit against the city to recover it. The declaration recited in very general terms, the several bonds to which the coupons that the plaintiff held had been originally annexed, setting forth that these bonds themselves had been sold and disposed of, to *bonâ fide* purchasers, and had since passed from hand to hand in the stock market, like other negotiable securities, so that the plaintiff could not produce them to the court; that the interest had accrued on the same; that the city had neglected and refused to pay it at the time and place designated; and that the interest and coupons were owned by the plaintiff, and that he brought the coupons into court to be cancelled.

The defendant pleaded, 1st, nil debet; 2d, that the several supposed causes of action had not accrued to the plaintiff within six years from the commencement of the suit; the statute of limitations. The plaintiff took issue on the first plea, and demurred to the second, which demurrer was sustained.

From the bill of exceptions, it appeared that the plaintiff gave in evidence the one hundred and seventy-two coupons, his doing which was objected to, but that the objection was overruled. It was admitted that all the coupons, with the exception of four, which were annexed to a bond produced, were coupons of different bonds of the same issue, but the bonds were not given in evidence. It was admitted also that more than six years had elapsed since the interest accrued on them.

After the plaintiff rested, the counsel for the defendant

prayed the court to charge the jury, 1st, that the bonds declared on, as well as the coupons, should have been produced, in order to sustain the declaration under the issue; and 2d, that the city of Kenosha had no authority to issue the bonds. Both prayers were refused.

The jury found a verdict for the plaintiff on the first issue to the amount of the several coupons, and judgment having been given accordingly the city brought the case here.

*Mr. Cary for the city of Kenosha, plaintiff in error:*

1. If the declaration was upon the coupons, the plea of *actio non accrevit infra sex annos* should have been sustained and the plaintiff's demurrer thereto overruled, for all the coupons recovered upon were more than six years past due. If the declaration counts upon the bonds, then the plea of *nil debet* not having been demurred to put in issue every fact necessary to the plaintiff's recovery, and required them to be proved. Certainly no recovery could be had upon the bonds without producing them, when they were counted upon as the cause of action and their existence denied by the plea. There was no proof that any such bonds had ever been made.

2. The only pretence of authority in the city to issue these bonds, rests in an act which is in plain repugnance to the constitution of the State. It is difficult to conceive a more absolute grant of power, or one that would more completely subject the whole property of the city to the wild and reckless schemes of the city council, for fancied improvements, than that act gives. It would be the duty of this court, under any circumstances, to hold the act unconstitutional and void. But the act has already been declared void by the Supreme Court of the State of Wisconsin,* which is the proper tribunal to determine its validity under the constitution of Wisconsin, and the decision of that court on this question, is conclusive upon this court.

*Messrs. Carpenter and Lynde, contra.*

---

* Foster *v.* Kenosha, 12 Wisconsin, 616.

Mr. Justice NELSON delivered the opinion of the court.

We agree that if this were an action upon the bonds to recover instalments of interest that had accrued thereon, although such instalments had been duly assigned to the plaintiff, there would be great difficulty in maintaining it in his name, as well as without producing the bonds, as the proper evidence that interest was due. The plaintiff, under such circumstances, doubtless, would have a remedy for withholding the interest; but it is not necessary or material to stop and point it out in the present case; for we do not regard the action as founded upon the bonds, but upon the coupons. The bonds are recited in very general terms, it is true, in the declaration; but, it is by way of explaining and bringing into view the relation which the coupons originally held to the bonds; and which, in an important sense, they still hold, though distinct as it respects ownership, as they represent the interest that had become due upon them. The relation we refer to is, that these coupons are not received, or intended to have the effect of extinguishing the interest due on the bonds; as this collateral security, or rather, this evidence of the interest, upon well-settled principles, cannot have that effect without an express agreement between the parties. Besides, the coupons are given, simply as a convenient mode of obtaining payment of the interest as it becomes due upon the bonds. There is no extinguishment till payment.

The recital is by way of inducement, as is familiar to special pleaders at common law, which Mr. Chitty says is in the nature of a preamble, stating the circumstances under which the contract was made, or to which the consideration has reference.* The office of an inducement is explanatory, and does not, in general, require exact certainty. Thus, says Mr. Chitty, when an agreement with a third person is stated only as an inducement to the defendant's promise, which is the principal cause of action, it is considered, in general, sufficient to state such agreement without certainty of name,

---

* 1 Chitty on Pleading, 290.

place, or person,* and where the matter is unnecessarily stated by way of inducement, and might be struck out as surplusage, and, as we shall show hereafter, may be said of that in the present case, the failure to make proof of the statement is not material.

The action, then, being founded upon the coupons, the material question arising on this branch of the case is whether or not the plea of the statute of limitations constitutes a good defence. It is admitted that more than six years have elapsed since the interest accrued on the coupons, and, if barred by this lapse of time, the defence is complete, and the court below erred in sustaining the demurrer.

As we have seen, the coupons were made contemporaneously by the city with the bonds for the accruing interest thereon. This appears on their face. The city of Kenosha, on the first September, &c., will pay twenty-five dollars at the People's Bank, &c., on presentation of this coupon, being the interest due that day on the bond of said city, numbered one, dated 1st September, 1857, which bond itself contains a covenant for the same interest. The coupon is not an independent instrument, like a promissory note for a sum of money, but is given for interest thereafter to become due upon the bond, which interest is parcel of the bond, and partakes of its nature; and the bond, being of a higher security than a simple contract debt, is not barred by lapse of time short of twenty years; and, as we have seen, this contemporaneous coupon does not operate as an extinguishment of the interest, unless there has been an express agreement to that effect. These coupons are, substantially, but copies from the body of the bond in respect to the interest, and, as is well known, are given to the holder of the bond for the purpose, first, of enabling him to collect the interest at the time and place mentioned without the trouble of presenting the bond every time it becomes due; and, second, to enable the holder to realize the interest due, or to become due, by negotiating the coupons to the bearer in business transac-

* 1 Chitty on Pleading, 291.

tions, on whom the duty of collecting them devolves. This device affords great convenience to all persons dealing in these securities, especially to the holders in foreign countries, who otherwise would be obliged to forward the bond to the place of payment of the interest each time it became due, or trust them to the hands of their correspondents in the country where the payment is made.

This convenience in the collection by the use of coupons, as is apparent, very much facilitates the negotiation of these securities abroad, and enhances their value in the foreign market. And any decision that would have the effect to lessen or impair the higher security for the interest as found in the bond, by the use of these coupons, would necessarily, to that extent, defeat the purpose for which they were designed. As we have seen, there is nothing in the contract between the parties that would lead to the conclusion the nature or character of the security by the bond for the interest was to be changed or lessened by the issue of the coupons, but the contrary; for if any such change had been intended, it should have been in some way indicated in the body of them. There was but one contract, and that evidenced by the bond, which covenanted to pay the bearer five hundred dollars in twenty years, with semi-annual interest at the rate of ten per cent. per annum. The bearer has the same security for the interest that he has for the principal. The coupon is simply a mode agreed on between the parties for the convenience of the holder in collecting the interest as it becomes due. Their great convenience and use in the interests of business and commerce should commend them to the most favorable view of the court; but, even without this consideration, looking at their terms, and in connection with the bond, of which they are a part, and which is referred to on their face, in our judgment it would be a departure from the purpose for which they were issued, and from the intent of the parties, to hold, when they are cut off from the bond for collection, that the nature and character of the security changes, and becomes a simple contract debt, instead of partaking of the nature of the higher security of

the bond, which exists for the same indebtedness.   Our con-
clusion is, that the cause of action is not barred by lapse of
time short of twenty years.   Recurring again to the decla-
ration, we have said that the preamble, or inducement, was
unnecessary, and might well be rejected as surplusage.   As
we have seen, it recites, in very general terms, the bonds to
which the several coupons in suit were annexed.   Now, each
coupon itself contains substantially, on its face, all this in-
formation.   It is issued for interest due at a certain day and
place on a bond, giving its number and date.   Another form
adds the amount, but this is unimportant, as the bond is
sufficiently identified without it.   The production of the
coupon, therefore, at the trial, will show the relation it bears
to the bond, and, if our opinion is sound, that in this con-
nection it cannot be legally severed from it till the interest
is paid, a count upon the coupon is all that can be material.

The only remaining question in the case is as to the au-
thority of the city of Kenosha to issue bonds to which the
coupons were annexed.

The act of 1857 of the legislature which amends and con-
solidates the several acts relating to the charter of the city,
confers full authority upon the common council to borrow
on the corporate credit of the city any sum of money for any
term of time, at any rate of interest, and payable at any
place deemed expedient, issuing bonds or scrip therefor.   It
is admitted this authority would be sufficient, but it is in-
sisted that the statute exceeds the authority of the legisla-
ture under the third section of the eleventh article of the
State constitution, which, it is asserted, requires the legisla-
ture to limit or restrict the amount of money to be raised by
the city.   Without inquiry into this question, it is sufficient
to say that, after the city had passed the ordinance lending
its credit to the railroad company to the amount of $100,000,
the legislature ratified it.   This was equivalent to an original
limit of this amount.

It is urged also that the Supreme Court of Wisconsin has
held that the act of the legislature conferring authority upon

the city to lend its credit, and issue the bonds in question, was in violation of the provision of the constitution above referred to. But, at the time this loan was made, and these bonds were issued, the decisions of the court of the State favored the validity of the law.* The last decision, cannot, therefore, be followed.†

JUDGMENT AFFIRMED.

Dissenting, Mr. Justice MILLER.

---

* See Dean *v*. Madison, 7 Wisconsin, 688; Clark *v*. Janesville, 10 Id 136.—REP.

† Gelpcke *v*. Dubuque, 1 Wallace, 175.